IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROBERT GRIZZLE #1998719 | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv447 |
| STACIE MCCOLLUM, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Robert Grizzle, an inmate of the Texas Department of Criminal Justice (TDCJ), proceeding *pro se*, filed this complaint under 42 U.S.C. § 1983 complaining of alleged violations of his constitutional rights in the TDCJ's Skyview Unit. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendants Delaney, McCollum, and Session moved to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted. (Dkt. #21.) Defendant Jackson subsequently moved to dismiss on the same grounds. (Dkt. #29.) Plaintiff responded in opposition to both motions, which are now ripe for review. (Dkt. ##30, 31.) For reasons explained below, the undersigned recommends that the motions be granted. The undersigned further recommends that Plaintiff's remaining claims be dismissed sua sponte and that Plaintiff's lawsuit be dismissed with prejudice in its entirety.

I. **Plaintiff's Pleadings**

Plaintiff alleges that in February and early March of 2021 he was sexually assaulted and poisoned with mercury by his cell-mate in the Telford Unit of the TDCJ. (Dkt. #17 at 11.) Plaintiff's health deteriorated, and he became depressed, angry, and homicidal. (*Id.*) In transit in

mid-March to a hospital in Galveston for back problems, the Plaintiff spent some time at the Byrd Unit, where he "spoke to psych" and reported his cell-mate's sexual assaults and his own homicidal ideations. (*Id.*) Plaintiff was next sent to Skyview Unit for inpatient crisis management. (*Id.*) During his intake meeting, Plaintiff reported to Defendant Delaney that he had been raped two weeks earlier by his cellmate. (*Id.*) Defendant McCollum, the intake nurse, Defendant Austin, the shift sergeant, and Defendant Session, the shift nurse, were all present for that meeting and all laughed at Plaintiff's report. (*Id.* at 12.) In response to his report of pain and a lesion on his anus, Defendant Delaney said that those issues could be dealt with upon his return to Telford, because the Skyview staff was not "dealing with that nonsense." (*Id.* at 12.)

On March 19, 2021, Plaintiff complained to psychiatric care provider Chasity Jackson about pain, nausea, vomiting, and double vision. (Dkt. #17 at 13.) Jackson did not get Plaintiff any medical attention, an emergency rape examination, or counseling. (*Id.*) She also did not get him a mattress, laughed at his report of being raped and having food stolen from him, and ignored his report that he needed a bedtime snack "in case his sugar gets low." (*Id.*)

On March 20, 2021, in a state of anger, sleep deprivation, and frustration, Plaintiff began punching the walls, hitting his head on the wall, knocking himself unconscious and experiencing double vision, vomiting and low blood sugar. (Dkt. #17 at 13.) He alleges that Defendant Jackson's failure to get him medical attention "caused the plaintiff to faint and hit his head on the toilet rendering him unconscious" and leaving a large contusion on his face. (*Id.*) According to Plaintiff, the Defendants' deliberate indifference to his serious medical needs led directly to his injuring himself. (*Id.*) A Defendant John Doe, possibly Officer Lackland, later woke Plaintiff, who was lying in his own vomit with his nose bleeding, and told Plaintiff that "he wasn't gonna deal with no nonsense" and left Plaintiff lying where he was. (*Id.* at 14.) The same John Doe later told

Plaintiff that if he did not "shut up," they would gas Plaintiff with chemical agents and put him in 5-point restraints. (*Id.*)

The Jane Doe nurse at the morning pill window on March 21, 2021, ignored Plaintiff's complaints of pain, dizziness, vomiting, and other ailments. (Dkt. #17 at 14.) Another John Doe Defendant, possibly Officer Crockett, ignored the same complaints at shift change, telling Plaintiff that "he should have told someone on night shift, that he wasn't gonna deal with that shit." (*Id.*) He told Plaintiff to put in a sick call request and laughed because he knew Plaintiff was in a "strip cell (suicide) with zero ability to put in a sick call." (*Id.*) And at evening pill window on the same day, another Jane Doe nurse told him somebody should have done something earlier about his complaints and that she was busy. (*Id.*)

On March 22, 2021, Plaintiff told Defendant Jackson that he was going to take a hostage "to bring attention to his situation" upon release from his psychiatric hold. (Dkt. #17 at 14.) Jackson laughed, called him an idiot, said she would see Plaintiff on the news, and discharged him from crisis management. (*Id.*) TDCJ records filed at the Court's request confirm that Plaintiff was at the Skyview Unit from March 17, 2021, until March 23, 2021. (Dkt. #12-1 at 7–9.)

Plaintiff alleges that he suffered nausea and vomiting for days and nose bleeds for two weeks, and that more than eighteen months later he was still suffering from extreme back pain, migraine headaches, neck pain, and pain in his hands. (*Id.*) He says the Defendants' failure to provide him with medical treatment caused him to suffer extreme pain and disfigurement of his hands. (*Id.* at 15.) He also alleges they violated his due process rights by failing to follow their own policies and procedures. (*Id.*)

He seeks a declaration that the Defendants violated his rights, in addition to compensatory and punitive damages. (*Id.* at 17.)

**II. Defendants' Motions to Dismiss**

Defendants move to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. (Dkt. ##21, 29.) First, they assert that any claims against Defendants in their official capacities should be dismissed for lack of jurisdiction under Rule 12(b)(1) on two grounds: (1) because such claims are broadly barred by sovereign and Eleventh Amendment immunity, and (2) because and any claim for prospective injunctive relief, as required to proceed under the limited exception of *Ex parte Young*, 209 U.S. 123 (1908), is moot in light of Plaintiff's transfer to another prison. (Dkt. #21 at 3–4.; Dkt. #29 at 3–4.)

Defendants also argue under Rule 12(b)(6) that Plaintiff fails to state a claim for which relief can be granted. Defendants McCollum and Sessions assert that Plaintiff has not alleged any personal involvement by them in any violation of his rights. (Dkt. #21 at 5–6.) They say his allegation that they were bystanders for his alleged conversation with Defendant Delaney is not sufficient to make them liable under Section 1983. (*Id.*)

Defendant Delaney asserts that Plaintiff's allegations against her do not establish a claim for deliberate indifference under the Eighth Amendment. (*Id.* at 6–9.) She argues that this alleged violation "stem[s] only from his alleged lack of treatment at the Skyview Unit based on an incident that allegedly took place at the Telford Unit" and that she "had no reason to believe that those allegations, regardless of their truthfulness, would continue at Skyview, and she was not a medical professional, thus she could not have made the inference of a substantial risk of serious harm." (*Id.* at 6–7, 9.) She points out that Plaintiff acknowledges that she completed a Safe Prisons/PREA questionnaire during Plaintiff's intake and that he was placed in a suicide cell. (*Id.* at 9.)

Defendant Jackson, likewise, asserts that Plaintiff's allegations against her do not establish a deliberate indifference claim under the Eighth Amendment. (Dkt. #29 at 5–9.) She says the

4

allegations against her are "mere conclusory allegations limited to two conversations" and that Plaintiff fails to show that he was at substantial risk of serious harm or that she actually made the inference that he was. (*Id.* at 7.) She asserts that, as a psychiatric care provider, "it is not within Jackson's purview whether [Plaintiff] receives meals at his unit of assignment or that he is given a mattress while in a suicide cell." (*Id.* at 8.) Plaintiff faults her for not getting him medical treatment, but "Jackson is a psych counselor, not a general medical provider," and she also "does not have authority to authorize Plaintiff receive a bedtime snack if he is hypoglycemic." (*Id.*)

Finally, all the moving Defendants assert that they are entitled to qualified immunity from Plaintiff's individual-capacity claims against them because he has not established any violation by them of a clearly established constitutional right. (Dkt. #21 at 9–11; Dkt. #29 at 9–11.)

**III. Plaintiff's Responses**

Plaintiff responds that he did allege personal involvement by Defendants McCollum and Sessions by describing the conversation in which he told "them all" that he had been raped and "each and every defendant laughed" at him and agreed with Delaney's response that "we ain't dealing with that nonsense." (Dkt. #30 at 1.) He argues that McCollum and Sessions were "responsible for [his] health" at the time of intake and that they ignored his report that he had been raped and needed medical and psychiatric treatment. (*Id.* at 2.) He says Defendants, if they acted properly, "would have been required to report it, do paperwork get me immediate mental health and medical treatment, tests, rape kit, notify the O.I.G.," et cetera, which "takes several hours to do." (*Id.* at 3.) He argues that their laughing at him and ignoring his complaints of rape and need for medical attention is repugnant and shocks the conscience. (*Id.*)

With regard to Defendant Delaney, Plaintiff argues that as the "Safe Prisons/PREA Sergeant" for Skyview, it is her duty to investigate claims of prison rapes, follow all PREA policies

5

and investigate PREA violations, file related reports, and advise the administration about PREA matters. (Dkt. #30 at 3–4.) He argues that "prison officials who do not take action with respect to sexual assaults they are informed of can be found deliberately indifferent," and suggests that her failure to take some administrative action as required by her job title is sufficient to make her liable despite the acknowledged lack of any "pervasive risk of sexual assault" as existed in the case law on which he relies. (*Id.* at 4.) Plaintiff argues that Delaney intentionally denied him medical care because she did not want to do the work associated with reporting his rape. (*Id.* at 5.) He asserts that "this is no mere disagreement with medical treatment, there was no medical treatment for rape provided for me at the Skyview Unit." (*Id.* at 6.)

Plaintiff disputes Defendant Jackson's assertion that she is not a member of medical staff and argues that "psych counselors are part of the medical staff." (Dkt. #31 at 2.) He reiterates that he reported to her that he had been raped, which constituted a serious medical need that would be apparent to someone who works in mental health, but that she refused to treat his mental health problems arising from the rape, despite the fact that his trauma and homicidal ideations due to the rape were the very reason he was at Skyview. (*Id.* at 3.) He also argues that her refusal to provide mental health treatment or refer him for medical treatment when he reported that he was pounding and banging his head on the wall and engaging in self-mutilation, or when he told her he was planning to take a hostage, establishes deliberate indifference. (*Id.*)

Plaintiff disputes that Defendants are entitled to qualified immunity because "any reasonable person knows that in a prison context when a prisoner reports a sexual assault, something must be done, some type of an investigation, medical assessment, etc." and Defendants' actions were objectively unreasonable. (Dkt. #30 at 8–9.) He cites *Gennoe v. Washburn*, No. 3:19-CV-00478, 2021 WL 3130834, at *1 (M.D. Tenn. July 23, 2021), and *Farmer v. Brennan*, 511

6

U.S. 825, 834 (1994), as similar cases supporting his position and asserts that the substantial risk he faced "was so obvious that even any layman would have perceived the risk" because a reported rape "standing alone" evidences a need for medical treatment. (*Id.* at 10.)

## IV. Legal Standards

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). The Rules require the court to dismiss a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Claims barred by the invocation of sovereign immunity "can be dismissed only under Rule 12(b)(1)." *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).

In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts or evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). When the defendant alleges a facial attack under Rule 12(b)(1), "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such

motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, Federal Rule of Civil Procedure 12(b)(6) permits dismissal if a plaintiff "fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414, 2012 WL 5419531 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*. *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations that raise the right

8

to relief above the speculative level. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

**V. Discussion and Analysis**

<u>A. Official Capacity Claims</u>

Ordinarily, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. Here, the Defendants have moved that the claims against them in their official capacities be dismissed for lack of jurisdiction.

The Eleventh Amendment bars a suit in federal court against a state unless the sovereign has unequivocally expressed a waiver of its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). Furthermore, because state officials assume the identity of the government that employs them, state officials sued in their official capacity are not liable for damages under section 1983. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, any claim for damages against any Defendant in this case in his or her official capacity must be dismissed.

The *Ex Parte Young* doctrine "represents an equitable exception to Eleventh Amendment sovereign immunity," through which plaintiffs may seek injunctive relief to enforce federal law against a state official in his official capacity. *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (discussing *Ex parte Young*, 209 U.S. 123 (1908)). But in this case, any claim for declaratory or injunctive relief is not a live case or controversy because Plaintiff is not currently housed at Skyview Unit:

> "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). "To obtain [declaratory] relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the

9

future." *Id.*

*Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (dismissing claim for declaratory judgment and allowing excessive-force claim to proceed). Plaintiff cannot satisfy that standard here because of his intervening transfer to another prison. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) ("Herman's transfer from [one prison to another] rendered his claims for declaratory and injunctive relief moot."). Accordingly, Plaintiff's official-capacity claims against all Defendants must be dismissed.

### B. Individual Capacity Claims

1. Deliberate indifference

The Court considers Plaintiff's claims under the Eighth Amendment and its prohibition against cruel and unusual punishment, which prohibits the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Eighth Amendment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing, and medical care. *Herman*, 238 F.3d at 664; *see also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones").

An Eighth Amendment violation occurs in prison only when two requirements are met. First, there is the objective requirement that the aggrieving condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina Cnty., Tex.*, 31 F.3d 331, 334 (5th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. at 304). Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In applying this standard, the determinative question is whether a defendant prison official subjectively knew that an inmate faced a substantial risk of serious harm yet disregarded that risk by failing to take reasonable steps to abate it. *Id.* To be deliberately indifferent, a prison official must have personally been aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and the official must also be found to have drawn the inference. *Id.* Conclusory allegations are not sufficient to satisfy this standard; a plaintiff must allege facts to support what are otherwise broad and conclusory allegations of wrongdoing. *See Rougley v. GEO Group*, 2011 WL 7796488, at *3 (W.D. La. Nov. 7, 2011).

The Fifth Circuit has discussed the "high standard" involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Even defendants "who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. In sum, in order to show deliberate indifference, the prisoner must show (1) objective exposure to a substantial risk of serious harm, (2) the defendants had subjective

11

knowledge of this substantial risk, (3) the defendants denied or delayed the prisoner's medical treatment despite their knowledge of this substantial risk, and (4) this denial of or delay in treatment resulted in substantial harm. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

Moreover, to be personally liable under Section 1983, an individual defendant "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695–96 (5th Cir. 2017). Accordingly, supervisors are not liable under a *respondeat superior* theory for the conduct of their subordinates under Section 1983, but are only liable for their own unconstitutional actions and omissions. *Iqbal*, 556 U.S. at 676 (government officials not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*); *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (rejecting claim that defendant was liable for failure to supervise other officers because "[u]nder § 1983 . . . a government official can be held liable only for his own misconduct"). "Liability under § 1983 for a supervisor may exist based either on 'personal involvement in the constitutional deprivation,' or 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Martinez v. Maverick Cty.*, 507 F. App'x 446, 448 (5th Cir. 2013) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 n.2 (5th Cir. 1987)).

Like the denial of necessary medical care, the deliberate indifference of prison officials to a prisoner's need for safety violates the Eighth Amendment. The same basic standard applies: the deliberate indifference required to state a constitutional claim "is an extremely high standard to meet," *Domino*, 239 F.3d at 756, and prison officials act with such indifference only if they know an inmate faces a substantial risk of serious harm and they disregard that risk by failing to take reasonable measures to alleviate it. *See Farmer*, 511 U.S. at 837; *accord Taylor v. Stevens*, 946

12

F.3d 211, 221 (5th Cir. 2019). Thus, the prison official "must both be aware of the facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Accordingly, while "prison officials have a duty to protect prisoners from violence," a prison official may be held liable under the constitution only if he "ha[s] a sufficiently culpable state of mind, which, in prison-conditions cases, is one of 'deliberate indifference' to inmate health or safety." *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (quoting *Farmer*, 511 U.S. at 834). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020), *cert. denied*, No. 20-6847, 2021 WL 1072375 (U.S. Mar. 22, 2021), *reh'g denied*, No. 20-6847, 2021 WL 2302124 (U.S. June 7, 2021) (quoting *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020)).

As an initial matter, none of Plaintiff's allegations about the failure of anyone at Skyview Unit to report or investigate his alleged rape at the Telford Unit, to fill out any paperwork related to it, or otherwise to comply with any requirements of the Prison Rape Elimination Act (PREA) state any claim for violation of his constitutional or statutory rights. Prisoners do not have a private cause of action for alleged violations of PREA, and violations of PREA do not amount to violations of a prisoner's constitutional rights. *Krieg v. Steele*, 599 F. App'x 231, 233 (5th Cir. 2015) ("[A]ny claim raised under the PREA is properly dismissed as frivolous."). Plaintiff alleges that these failures by Skyview staff violated policy, but the failure of prison staff to follow rules and regulations does not, alone, establish deliberate indifference. *See Thompson v. AVC Correctional Center Staff*, 2013 WL 3778911, at *3 (W.D. La. July 17, 2013) (dismissing a failure-to-protect claim in which the plaintiff urged that correctional officers failed to protect him from an assault

by another inmate and were deliberately indifferent to a serious risk of harm because they left the plaintiff and assailant together and unattended in violation of prison policy, noting that "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation") (citing *Richardson v. Thorton*, 299 F. App'x 461, 462–63 (5th Cir. 2008) ("The failure of the prison to follow its own policies . . . is not sufficient to make out a civil rights claim.")); *Sandoval v. Fox*, 135 F. App'x 691, 691–92 (5th Cir. 2005) ("The mere failure to comply with prison rules and regulations does not, without more, give rise to a constitutional violation.")).

The Court also easily disposes of any claim against Defendant Delaney for allegedly failing to provide Plaintiff with a bedtime snack. As a correctional sergeant tasked with Safe Prisons/PREA issues, Delaney cannot be presumed to have made any actual inference that the lack of a bedtime snack raised a substantial risk that Plaintiff would experience hypoglycemia or that any serious harm would come to him as a result. This allegation cannot establish her liability for deliberate indifference to Plaintiff's serious medical needs.

As the Court understands what remains of Plaintiff's complaint aside from those two claims, he alleges that various Defendants were deliberately indifferent to his need for a medical examination due to the alleged rape, to his need for psychological counseling due to the alleged rape, and to his need for some intervention to prevent or treat the self-harm in which he engaged while he was at Skyview. The Court will take each of these categories in turn.

By the time Plaintiff arrived at Skyview on March 17, 2021, the alleged rape(s) had happened weeks earlier and had already been reported while he was at the Byrd Unit. (Dkt. #17 at 11.) Plaintiff complains that Defendants denied him medical examination and treatment for the rape, but he does not explain what treatment he required or what an examination would have accomplished weeks after the fact. Moreover, Plaintiff was only at the Skyview Unit for

psychiatric "crisis management," which was clearly intended to be—and was—a short-term stay. His allegation of pain and a lesion on his anus are not the type of injuries that are so severe or urgent that the Court can presume anyone hearing of them would make the inference that Plaintiff faced a substantial risk of serious harm in the absence of immediate treatment. Defendant Delaney's response to the effect that those conditions could be addressed upon return to Plaintiff's assigned prison unit, therefore, was not unreasonable under the circumstances, nor was the agreement with that response by Defendants Austin, McCollum, or Sessions. And even if that reaction were negligent, negligence does not amount to a constitutional violation. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997); *Gobert*, 463 F.3d at 346.

Plaintiff also alleges throughout his complaint that he was denied counseling or psychological treatment for his rape-related trauma. But the entire context of this suit is that Plaintiff was in psychiatric crisis management at Skyview, where he acknowledges that he was placed in a "suicide cell" and visited regularly by staff, including a psychiatric counselor. He claims he was denied "emergency . . . mental health services" despite being literally held in an emergency mental health environment. Plaintiff's complaint also makes clear that he was receiving medications while at Skyview, as evidenced by his interaction with nurses at the pill window both morning and evening.

The conditions under which Plaintiff was held and the treatment he received was not successful in preventing him from engaging in self-harm at Skyview. But for Section 1983's purposes, failed treatment is fundamentally different than no treatment at all. Even if Defendants were negligent in their assessment of what measures needed to be taken to keep Plaintiff safe, that does not rise to the level of deliberate indifference required to hold them liable under Section 1983. Plaintiff clearly perceives staff's reference to the possibility of placing him in 5-point restraints to

15

stop his self-abusive behavior to be a threat, but he does not allege with any specificity what type of additional treatment he believes should have been provided or establish that any Defendant subjectively knew such treatment was necessary to avoid serious harm. In *Domino*, the Fifth Circuit determined that a psychiatrist was entitled to summary judgment on a deliberate indifference claim despite returning a prisoner who expressed suicidal ideations to his cell after a five-minute examination, where the prisoner later committed suicide. 239 F.3d at 756. Defendants here similarly failed to prevent Plaintiff's self-harm, but there is no evidence that they subjectively perceived that holding him in a "suicide cell" and providing the other services acknowledged in the complaint would be insufficient to abate any substantial risk of serious harm.

And finally, Plaintiff suggests that members of Skyview staff were indifferent to the facial contusion, vomiting, and nose bleed he experienced after fainting and hitting his head on the toilet and to his pain, nausea, and double-vision caused by his hitting his head against the wall. But again, Plaintiff does not allege with any specificity what treatment he believes Defendants should have provided or how he was harmed by the lack of treatment for those injuries for the few days he was at Skyview. Defendants' actions must be judged in their subjective context, and it is not so clear that Plaintiff's physical complaints required urgent attention during his brief stay at Skyview that the Court can presume the Defendants made that inference. And again, Plaintiff was receiving close observation and medication while at Skyview, and any negligence in the failure to provide more or different treatment would not amount to a violation of Plaintiff's constitutional rights.

Accordingly, Defendants are correct that Plaintiff has failed to establish a violation of his right to be free from deliberate indifference to his serious needs under the Eighth Amendment.

16

2. Qualified immunity

Alternatively, the Defendants have invoked the defense of qualified immunity. In order to overcome qualified immunity, a plaintiff must allege facts showing that the government official violated a constitutional right and that the right was clearly established at the time of the challenged conduct. *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022). The Fifth Circuit has explained as follows:

> Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It protects 'all but the plainly incompetent or those who knowingly violate the law.' *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
>
> Our qualified immunity inquiry is two-pronged. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). First, we ask whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Second, we ask whether the right was 'clearly established.' *Id.* We can analyze the prongs in either order or resolve the case on a single prong. *Id.*

*Cunningham v. Castloo*, 983 F.3d 185, 190–91 (5th Cir. 2020).

After explaining that a right is "clearly established" only if it is sufficiently clear that every reasonable official would have understood that the defendant's conduct violated that right, and that there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that the conduct is definitively unlawful, the Fifth Circuit went on to state:

> When an official raises qualified immunity on summary judgment, as Sheriff Castloo did here, the plaintiff bears the burden of showing that the defense does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020). To meet that burden, the plaintiff must present evidence, viewed in her [i.e. the plaintiff's] favor, satisfying both qualified immunity prongs by showing that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct. *See id.*

*Cunningham*, 983 F.3d at 191; *see also Byrd v. Harrell*, 48 F.4th 343, 346 (5th Cir. 2022) ("When a government official has asserted qualified immunity, 'the burden shifts to the plaintiff to 'rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.''" (Citation omitted)). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton County, Texas*, 741 F.3d 635, 643–44 (5th Cir. 2014).

While there is no doubt that in general terms, the right to be free from deliberate indifference to serious medical or psychological needs was clearly established in 2021, Plaintiff does not allege facts that clearly establish a violation of this right in this case, nor that any reasonable medical or mental health personnel would have known that the conduct of the Defendants was unlawful. The cases on which he relies do not support his position.

First, *Farmer v. Brennan*, 511 U.S. 825 (1994), established the standard for constitutional deliberate indifference claims in general. Its specific application of that standard concerned the risk of harm to a transgender prisoner in the general population where she would be "particularly vulnerable" in a facility with a known "violent environment and a history of inmate assaults," and whether the defendants could be presumed to have actual knowledge of that risk. *Id.* at 831. It does not "clearly establish" any violation that would result from the facts of this case.

*Gennoe v. Washburn*, No. 3:19-CV-00478, 2021 WL 3130834, at *1 (M.D. Tenn. July 23, 2021), is closer to being on point in that it involves alleged deliberate indifference to an inmate's reported rape. But it was an unpublished opinion, decided months after the events alleged in Plaintiff's complaint took place, by a district court in another federal circuit with no jurisdiction over the Defendants to this case. It thus did not "clearly establish" anything for these Defendants

at the time of their alleged conduct in this district. *See*, *e.g.*, *Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016) (explaining that because a prior opinion "is unpublished, it does not constitute clearly established law for purposes of QI"); *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 458 (5th Cir. 2001) ("Moreover, *Weaver* is not only a decision of a district court outside of this circuit, and not a decision of this Court, but it was handed down almost eighteen months after Thompson died, and cannot be considered part of any body of law that was then clearly established."); *Jamison v. McClendon*, 476 F. Supp. 3d 386, 417 (S.D. Miss. 2020) ("[T]his Court's opinions cannot serve as 'clearly established' precedent."). Moreover, the facts of *Gennoe* are materially distinguishable from Plaintiff's case in that they involved a prisoner's initial efforts to report a rape and seek medical attention beginning within hours of the rape in the prison where it occurred, unlike Plaintiff's requests weeks later at another unit after already reporting the rape before his arrival.

The Defendants would be entitled to qualified immunity from suit even if the facts could be construed to amount to a constitutional violation.

**VI.   Conclusion**

For the reasons explained above, Plaintiff fails to state a viable claim for any type of relief with respect to any of his allegations, and Defendants are entitled to dismissal under Fed. R. Civ. P. 12(b)(1) and (6). Because the analysis above includes and applies equally to the non-moving John and Jane Doe Defendants, including those tentatively identified as "Officer Unknown" with surnames, and the Court maintains authority to dismiss "at any time" any claims against a party who is immune from suit or which fail to state a claim for which relief can be granted, the claims against the non-moving parties should also be dismissed in full. 28 U.S.C. § 1915(e)(2).

<u>RECOMMENDATION</u>

Accordingly, the undersigned recommends that Defendants' motions to dismiss (Dkt. #21, 29) be **GRANTED** and that this action be **DISMISSED** pursuant to Rule 12(b)(1) and (6) for lack of jurisdiction and failure to state a claim for which relief can be granted.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 4th day of August, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE